## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEVIN BACIK,
11629 Clifton Boulevard
Cleveland, OH 44102

*Plaintiff*

vs.

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY d/b/a ERIE
INSURANCE EXCHANGE,
100 Erie Insurance Place
PO Box 1699
Erie, PA 16530

*Defendant*

Case Number:   1:20-cv-144

**JURY TRIAL DEMANDED**

---

### COMPLAINT AND REQUEST FOR DECLARATORY RELIEF

Plaintiff, KEVIN BACIK, by and through undersigned counsel, state as follows for his

Complaint and Request for Declaratory Relief against defendant ERIE INSURANCE PROPERTY

& CASUALTY COMPANY d/b/a ERIE INSURANCE EXCHANGE:

### I.      PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Kevin Bacik is a citizen of Ohio.  He is a sole proprietor barber. He is the

operator of multiple businesses, including Eddy's Barber Shop LLC and Eddy's Management Co.

2.      Defendant Erie Insurance Property & Casualty Company d/b/a Erie Insurance

Exchange ("Erie Insurance") is a Pennsylvania business corporation with its principal place of

business in Erie, Erie County, Pennsylvania.

3.     The Court has subject matter jurisdiction over this matter under 28 U.S.C. 1332(a), because this matter involves citizens of different states and the amount in controversy exceeds $75,000.

4.     Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(1), as Defendant Erie Insurance is the only Defendant in this action and its principal place of business is located in Pennsylvania.

## II.     FACTUAL SUMMARY

### A.  The Insurance Policy

5.     This action is brought by Plaintiff due to Defendant's decision not to provide coverage for losses stemming from the SARS-CoV-2 virus and/or the COVID-19 Pandemic, including Income Protection Coverage ("ICP"), Extra Expense ("EE") coverage, and coverage for loss due to the actions of a Civil Authority.

6.     At all times relevant, Defendant Erie Insurance insured Plaintiff pursuant to an insurance policy drafted by Erie Insurance (the "Policy").

7.     Plaintiff is insured pursuant to policy number Q972214904. A copy of the Policy is attached as Exhibit 1.

8.     The Insurance Services Office, Inc. ("ISO") publishes policy forms for use by the insurance industry.

9.     The Policy utilizes, in part, policy forms and language published by the ISO, as reflected by the ISO copyright designation at the bottom of certain pages of the Policy.

10.    Prior to the effective date of the Policy, ISO published and made available for use a standard virus exclusion form.

11.     Defendant Erie Insurance chose not to include the ISO standard virus exclusion form in the Policy.

12.     Other than reference to a computer virus, the Policy includes no exclusion that references the word virus.

13.     Plaintiff's Policy provides Income Protection Coverage ("IPC"), Extra Expense ("EE") coverage, and coverage for loss due to the actions of a Civil Authority.

14.     Relevant portions of the Policy provide, subject to other terms, that Defendant Erie Insurance provides coverage for:

   a. "Income Protection [which] means loss of 'income' and/or 'rental income' you sustain due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against"; and

   b. "'Extra Expense' [which] means necessary expenses you incur due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against"; and

   c. "…the actual loss of 'income' and/or 'rental income' you sustain and necessary 'extra expense' caused by action of civil authority that prohibits access to the premises described in the 'Declarations' … ."

15.     The term "civil authority" is not defined in the Policy.

16.     While the Policy was in force, Plaintiff sustained, and continues to sustain, loss(es) due to SARS-CoV-2 and COVID-19 at, in, on, and/or around its premises described in the Policy.

17.     While the Policy was in force, Plaintiff sustained, and continues to sustain, loss(es) due to the spread of SARS-CoV-2 and COVID-19 in the community.

18.     While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to the civil authority orders issued by the Governor of Ohio and the Ohio Department of Health addressing SARS-CoV-2 and COVID-19 Pandemic.

**B. The SARS-CoV-2 Virus**

19.    SARS-CoV-2 is a virus.

20.    SARS-CoV-2 is a physical substance.

21.    SARS-CoV-2 can cause the illness known as COVID-19, which can be lethal.

22.    SARS-CoV-2 can be present outside the human body in viral fluid particles.

23.    SARS-CoV-2 can and does remain capable of being transmitted and active on inert physical surfaces for a period of time.

24.    SARS-CoV-2 can and does remain capable of being transmitted and active on floors, walls, furniture, desks, tables, chairs, countertops, computer keyboards, touch screens, cardboard packages, scissors, hairbrushes, food items, silverware, plates, serving trays, glasses, straws, menus, pots, pans, kitchen utensils, faucets, refrigerators, freezers, and other items of property for a period of time.

25.    SARS-CoV-2 can be transmitted by way of human contact with surfaces and items of physical property on which SARS-CoV-2 particles are physically present.

26.    SARS-CoV-2 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Ohio.

27.    SARS-CoV-2 has been transmitted by human to human contact and interaction at premises in Ohio, including places like bars and restaurants, retail stores, and hair and beauty salons, for example.

28.    SARS-CoV-2 can be transmitted through airborne particles emitted into the air at premises.

29.    SARS-CoV-2 has been transmitted by way of human contact with airborne SARS-CoV-2 particles emitted into the air at premises in Ohio.

30.     The presence of any SARS-CoV-2 particles renders items of physical property unsafe.

31.     The presence of any SARS-CoV-2 particles on physical property impairs its value, usefulness and/or normal function.

32.     The presence of any SARS-CoV-2 particles causes direct physical harm to property.

33.     The presence of any SARS-CoV-2 particles causes direct physical loss to property.

34.     The presence of any SARS-CoV-2 particles can result in the direct physical loss of property.

35.     The presence of any SARS-CoV-2 particles causes direct physical damage to property.

36.     The presence of any SARS-CoV-2 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness and/or normal function.

37.     The presence of people infected with COVID-19 or carrying SARS-CoV-2 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to and of that property.

38.     The presence of people infected with COVID-19 or carrying SARS-CoV-2 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to and of the premises and property.

### C. Ohio's Response to SARS-CoV-2 and COVID-19 – Civil Authority Orders

39.     In response to SARS-CoV-2 and the COVID-19 Pandemic, the Governor of Ohio has issued multiple executive orders pursuant to the authority vested in him by the Ohio Constitution and the laws of Ohio.

40.     Similarly, the Ohio Department of Health, pursuant to its authority under Ohio law, has issued multiple orders, including a Stay At Home Order.

41.     The State of Ohio is a civil authority as contemplated by the Policy.

42.     The Ohio Department of Health is a civil authority as contemplated by the Policy.

43.     The Governor of the State of Ohio is a civil authority as contemplated by the Policy.

44.     On March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic.

45.     On March 9, 2020, Ohio Governor Mike DeWine issued Executive Order 2020-01D, which declared a state of emergency in response to the physical presence of SARS-CoV-2 and the COVID-19 Pandemic.

46.     On March 18, 2020, Ohio ordered the temporary closure of all barbershops, hair salons, nail salons, and tattoo parlors in the State of Ohio.

47.     On March 22, 2020, the Ohio Department of Health issued a Stay at Home Order, effective March 23, 2020, ordering Ohio residents to stay at home.  By way of this order, the State of Ohio ordered all non-essential businesses in Ohio to cease all activities.

### D. Ohio's Exercise of Civil Authority Closes Plaintiff's Business

48.     Plaintiff's business does not qualify as an Essential Business under governing civil authority orders and was required to cease and/or significantly reduce operations.

49.     The civil authority orders prohibited access to Plaintiff's premises described in the Policy.

50.     The State of Ohio, through the Governor and the Department of Health, have issued, and continue to issue, authoritative orders governing Ohioans and Ohio businesses, including Plaintiff, in response to SARS-CoV-2 and the COVID-19 Pandemic, the effect of which

have required and continue to require Plaintiff to cease and/or significantly reduce operations at,

and that have prohibited and continue to prohibit access to, the premises described in the Policy.

51.     State and local governmental authorities, and public health officials around the

Country, acknowledge that SARS-CoV-2 and the COVID-19 Pandemic cause direct physical loss

and damage to property.  For example:

a.  The state of Colorado issued a Public Health Order indicating that "COVID-19… physically ***contributes to property loss, contamination, and damage***…" (Emphasis added);

b.  The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus ***physically is causing property loss and damage***."  (Emphasis added);

c.  Broward County, Florida issued an Emergency Order acknowledging that COVID-19 "***is physically causing property damage***."  (Emphasis added);

d.  The State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression… remains a public disaster affecting life, health, [and] ***property***…"  (Emphasis added);

e.  The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to ***physically*** impact surfaces and personal ***property***." (Emphasis added);

f.  The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and ***causing property loss and damage*** in certain circumstances."  (Emphasis added);

g.  The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "***property***." (Emphasis added);

h.  North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of… ***property***."  (Emphasis added); and

i.  The City of Los Angeles issued an Order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is ***physically causing property loss or damage*** due

to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

52.    SARS-CoV-2 and the COVID-19 Pandemic are physically impacting public and private property in Cuyahoga County, Ohio and throughout the country.

53.    SARS-CoV-2 and the COVID-19 Pandemic have caused and continue to cause direct physical loss and damage to property.

54.    People in Cuyahoga County, Ohio have been diagnosed with COVID-19.

55.    People in Cuyahoga County, Ohio have, and have had, SARS-CoV-2 but have not been diagnosed with COVID-19.

56.    People in Cuyahoga County, Ohio have SARS-CoV-2 particles on or about their person and personal property.

57.    Properties and premises throughout Cuyahoga County, Ohio contain the presence of SARS-CoV-2 particles on surfaces and items of property.

58.    It is probable that SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

59.    It is probable that SARS-CoV-2 particles have been physically present on surfaces and items of property located at Plaintiff's premises described in the Policy during the time the Policy was in effect.

60.    It is probable that airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

61.    It is probable that people carrying SARS-CoV-2 particles in, on or about their person have been present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

62.     It is probable that airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

63.     Plaintiff has sustained direct physical loss of and to damage to items of property located at its premises and direct physical loss of and to damage to its premises described in the Policy as a result of the presence of SARS-CoV-2 particles and/or the Pandemic.

64.     Plaintiff submitted a timely insurance claim to Defendant Erie Insurance.

65.     Defendant Erie Insurance has denied or otherwise refused to honor Plaintiff's claim(s) for coverage under the Policy.

## COUNT I: DECLARATORY JUDGMENT

66.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

67.     There is a dispute about whether Plaintiff is entitled to coverage under the Policy for loss(es) sustained and to be sustained in the future as described herein. Accordingly, Plaintiff is entitled to declaratory relief from this Court pursuant to 28 U.S.C. § 2201(a).

68.     Plaintiff is entitled to and demands a declaration that:

   a.   Plaintiff sustained direct physical loss or damage to property at the premises described in the Policy as a result of SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic;

   b.   SARS-CoV-2 and/or COVID-19 is a peril insured against under the Policy;

   c.   The COVID-19 Pandemic is a peril insured against under the Policy;

   d.   The losses incurred by Plaintiff as the result of the orders issued by the Governor of Ohio and the Ohio Department of Health are perils insured against under the Policy;

   e.   Defendant Erie Insurance has not and cannot prove the application of any exclusion or limitation to the coverage for Plaintiff's losses alleged herein;

    f.   Plaintiff is entitled to coverage for his past and future income and rental income loss(es) and Extra Expense resulting from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic for the time period set forth in the Policy;

    g.   Plaintiff is entitled to coverage for loss(es) due to the actions of Ohio civil authorities, including the Governor of Ohio and the Ohio Department of Health;

    h.   Plaintiff has coverage for any substantially similar civil authority order in the future that limits or restricts the access to Plaintiff's places of business and/or operations; and

    i.   Any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

69.    Plaintiff does not seek a determination of their damages resulting from SARS-CoV-2, the COVID-19 or the COVID-19 Pandemic. If there is a dispute between the parties as to the amount of the loss, the Policy provides that such a dispute should be resolved by Appraisal:

**APPRAISAL**

If you and we fail to agree on the cost to repair damage to covered property caused by a covered peril insured against, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days after both appraisers have been identified, you or we can ask a judge of a court of record in the state where your principal office is located to select an umpire.

The appraisers shall then determine the cost to repair damage to covered property. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of direct and accidental 'loss' of or damage to covered property. If they cannot agree they will submit their differences to the umpire. A written award by two will determine the amount of direct and accidental 'loss' of or damage to covered property.

Each party will pay the appraiser it chooses, and equally bear expenses of the appraisal. However, if the written demand for appraisal is made by us, we will pay for the reasonable cost of your appraiser and your share of the cost of the umpire. (PK-00-01 (Ed. 9/18) CL-0001, Page 32).

70.     Plaintiff prays for declaratory relief from the Court that Defendant Erie Insurance must resolve any dispute about the amount of loss via Appraisal. Plaintiff also requests the Court to appoint the umpire if the appraisers cannot agree.

71.     Plaintiff prays for any further relief the Court deems proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

WHEREFORE, Plaintiff seeks judgment against Defendant Erie Insurance, as set forth above, plus interest, costs, and attorney fees as allowed by law.

## DEMAND FOR TRIAL BY JURY

Dated: June 9, 2020

Respectfully Submitted,

*/s/ Robert P. Rutter*
Robert P. Rutter (OH Bar 0021907)
Robert A. Rutter (OH Bar 0081503, Pro Hac Vice motion forthcoming)
**RUTTER & RUSSIN, LLC**
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Ohio 44131
(216) 642-1425
(216) 642-0613
brutter@OhioInsuranceLawyer.com
bobbyrutter@OhioInsuranceLawyer.com

Nicholas A. DiCello (OH Bar 0075745, Pro Hac Vice motion forthcoming)
Dennis R. Lansdowne (OH Bar 0026036, Pro Hac Vice motion forthcoming)
Stuart Scott (OH Bar 0064834, Pro Hac Vice motion forthcoming)
Jeremy A. Tor (OH Bar 0091151, Pro Hac Vice motion forthcoming)
**SPANGENBERG, SHIBLEY & LIBER, LLP**
1001 Lakeside Ave., Suite 1700
Cleveland, Ohio 44114
(216) 696-3232
(216) 696-3924
ndicello@spanglaw.com
dlansdowne@spanglaw.com
sscott@spanglaw.com
jtor@spanglaw.com